# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17-cv-00470-RJC-DSC

| | |
|---|---|
| CASCADE CAPITAL, LLC and <br> CASCADE CAPITAL, LLC – <br> SERIES A, <br><br> Plaintiffs, <br><br> v. <br><br> DRS PROCESSING LLC d/b/a <br> MILLER STARK KLEIN & <br> ASSOCIATES <br><br> Defendants. | **ORDER** |

**THIS MATTER** comes before the Court on Cascade Capital, LLC's and Cascade Capital, LLC-Series A's ("Plaintiffs'") Motion for Default Judgment, (Doc. No. 13), and their Memorandum in Support, (Doc. No. 14). Plaintiffs' Motion is now ripe and ready for adjudication.

## I. BACKGROUND

a. Procedural Background

Plaintiffs filed their complaint on August 8, 2017, (Doc. No. 1), and Defendant was served on August 18, 2017 by Certified Mail, Return Receipt Requested, (Doc. No. 5). On August 24, 2017, Plaintiffs filed a Motion for Temporary Restraining Order, (Doc. No. 6), and a Memorandum in Support, (Doc. No. 7). On September 18, 2017, Plaintiffs filed a Motion for Entry of Default, (Doc. No. 11), which was granted by the Clerk's office on September 20, 2017, (Doc. No. 12). On November 1, 2017, Plaintiffs Motioned for Default Judgment. (Doc. No. 13). Defendants have yet to appear or submit a document before the Court.

A hearing regarding this matter was held on November 8, 2017, where the Court heard Plaintiffs' arguments in support of their Motion of Default Judgment and their requested injunctive relief. The Court notes that Plaintiffs did not give Defendant notice of this hearing, nor were they required to. Defendant has not appeared personally in front of this Court since they were served by Plaintiffs. FED. R. CIV. P. 55(b)(2) ("*If* the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.") (emphasis added).

b. Factual Background

Plaintiffs' business involves the purchase of consumer accounts. (Doc. No. 14 at 1). Once Plaintiffs purchases an account, they either place it with third party agencies for collection or sell portions of the account to third party purchasers. (Id.). Among others, Plaintiffs have developed a purchase relationship with Santander Consumer USA ("Santander"). (Id.). Santander's practice involves selling accounts by transmitting portfolios to potential buyers who then evaluate the portfolio prior to purchasing the account. (Id. at 2). Plaintiffs believe that Santander requires all potential buyers to sign a non-disclosure agreement in order to receive these portfolios. (Id.).

Around July 25, 2014 and June 9, 2015, Plaintiffs purchased automobile portfolios and accounts from Santander. (Id.). These portfolios contain more than 200,000 consumer accounts. (Id. at 16). Plaintiffs have documentation of each account's full chain of title. (Id. at 2). Other parties expressed interest in these automobile accounts and viewed their portfolios after signing a non-disclosure agreement. Ultimately, however, Plaintiff Cascade Capital, LLC was the sole buyer who received title. (Id. at 2). Cascade Capital, LLC thereafter transferred the legal title of some of these automobile accounts to its series limited liability companies, such as Cascade

Capital-Series A. (Id.). Neither Plaintiffs nor Santander transferred title to the automobile accounts to Defendant. (Id.).

Plaintiffs allege that "Defendant either: (1) directly obtained information related to accounts within the Santander Portfolios; or (2) accounts within the Santander Portfolios were placed with Defendant for collection by a third party other than Cascade." (Id.). Through either means, Plaintiffs became aware that Defendant began to collect on these automobile accounts in February of 2017. (Id. at 3). Defendant's communications to consumers stated that Defendant—not Plaintiffs—had the legal title and the right to collect on the account's balance. One such communication stated:

> Miller Stark Klein and Associates purchased this account with the legal right to collect, settle or close for the amount noted above . . . Once the settlement is completed and final payment posts the balance is considered paid in full and no further legal obligation is owed. You will have a paid account with a (-0-) zero balance. This letter will serve notice to all parties directly or indirectly involved that any attempts to contact this consumer or to collect on this arrangement after receipt of this letter is considered illegal and harassment under the guidelines set forth by the F.D.C.P.A.

(Doc. No. 14 at 4).

Affected customers notified both Plaintiffs and Santander about Defendant's collections. (Id.). While Plaintiffs remain unaware of the total number of consumers contacted by Defendant, they found that at least 72 accounts were contacted and that this number has grown since the filing of this action. (Id.). Those 72 known accounts have an aggregate balance of $511,210.88 and Plaintiffs believe approximately $27,000.00 has been paid to Defendant. (Id. at 6).

Prior to filing their complaint, Plaintiffs made efforts to reach out to Defendant in the hopes of ending their collection on the Santander accounts. (Id.). Those efforts, however, were in vain. Defendant continues to contact Plaintiffs' automobile accounts and assert false representations,

such as telling consumers that: "(1) the accounts were rightfully assigned to Defendant and/or that Defendant has been engaged to resolve the delinquent debt; (2) Defendant has the right to collect upon the account; and (3) payment to Defendant would operate as cease and desist to any other agency as well as the original creditor that the matter was paid in full as agreed and act as a cease and desist in the action." (Id. at 4).

## II. LEGAL STANDARDS

Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (citations omitted); see also FED. R. CIV. P. 8(b)(6) ("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."). However, the defendant is not deemed to have admitted conclusions of law and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted); see also E.E.O.C. v. Carter Behavior Health Servs., Inc., No. 4:09-cv-122-F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. See Ryan, 253 F.3d at 780 (citing Weft, 630 F. Supp. at 1141); DIRECTV, Inc. v. Pernites, 200 F. App'x 257, 258 (4th Cir. 2006) (a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Arista Records, LLC v. Gaines, 635 F. Supp. 2d 414, 416 (E.D.N.C. 2009); 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its

discretion, may require some proof of the facts that must be established in order to determine liability.").

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then determine damages. Carter Behavior Health, 2011 WL 5325485, at *4 (citing Ryan, 253 F.3d at 780-81; Gaines, 635 F. Supp. 2d at 416-17). The court must make an independent determination regarding damages, and cannot accept as true factual allegations of damages. Id. (citing Lawbaugh, 359 F. Supp. 2d at 422). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. See EEOC v. CDG Mgmt., LLC, No. RDB-08-2562, 2010 WL 4904440, at *2 (D. Md. Nov. 24, 2010) (citations omitted); EEOC v. North Am. Land Corp., No. 1:08-cv-501, 2010 WL 2723727, at *2 (W.D.N.C. Jul. 8, 2010).

### III.   DISCUSSION

"Decisions are made by those who show up." President Bartlet, *The West Wing: What Kind of Day Has it Been?* (NBC television broadcast May 17, 2000). Defendant has yet to appear before this Court or respond to Plaintiffs' motions. They have yet to "show up" and, as a result, have halted the adversarial process. Appropriately, Plaintiffs now seek default judgment as to their three claims for relief within their initial complaint. (Doc. No. 13). Those claims include: (1)

tortious interference; (2) unjust enrichment and money had and received; and (3) unfair and deceptive trade practices. (Doc. No. 1 at 8–11). In addition to monetary damages, Plaintiffs seek injunctive relief to prevent Defendant from communicating with, or collecting from, Plaintiff's consumers. (Id. At 11–14). The Court will first determine whether Plaintiffs' well pleaded facts support their claims. After that, the Court will then assess Plaintiff's request for injunctive relief.

### A. Tortious Interference

The elements for tortious interference are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person;
> (2) the defendant knows of the contract;
> (3) the defendant intentionally induces the third person not to perform the contract;
> (4) and in doing so acts without justification;
> (5) resulting in actual damage to plaintiff.

Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC, 784 S.E.2d 457, 462 (N.C. 2016). To meet these elements, Plaintiffs argue that they legally acquired each account within the portfolios from Santander. (Doc. No. 14 at 8). Therefore, Plaintiffs assert that they have valid contracts with each consumer connected to the Santander accounts. (Id.). Because Plaintiffs had previously contacted Defendant in an attempt to prevent further collection of the Santander automobile accounts, Plaintiffs further allege that Defendant knew that Plaintiffs were the rightful owner of those accounts. (Id,). Even with this knowledge, Plaintiffs assert that Defendant intentionally induced the consumers of those accounts to pay Defendant rather than perform their contract with Plaintiff. (Id.). As a result of this intentional conduct, Plaintiffs claim damages no less than $511,210.88—the aggregate balance of the accounts identified thus far. (Id. at 9).

Upon review, this Court agrees that Plaintiffs' well-pleaded complaint sufficiently alleges Defendant's liability under tortious interference. In support of their allegations, Plaintiffs present the affidavit of one Ashley Beasley who identifies the 72 known accounts affected by Defendant's actions. (Id.). While Plaintiffs can still collect on their consumers' accounts, they allege injury by way of marketplace confusion, consumers' failure to make payments, and damaged business relationships. (Id. at 9).

B. Unjust Enrichment and Money Had and Received

In order to prevail on a claim for unjust enrichment, Plaintiff must establish: "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." Lake Toxaway Cmty. Ass'n v. RYF Enters., LLC, 742 S.E.2d 555, 561 (N.C. Ct. App. 2013) (quoting Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co., 712 S.E.2d 670, 677 (N.C. App. Ct. 2011); JPMorgan Chase Bank, Nat'l Ass'n v. Browning, 750 S.E.2d 555, 559 (N.C. App. Ct. 2013). Within the realm of unjust enrichment, Plaintiff also brings an action for money had and received. Such an action "may be maintained as a general rule whenever the defendant has money in his hands which belongs to the plaintiff, and which in equity and good conscience he ought to pay to the plaintiff." Primerica Life Ins. Co., 712 S.E.2d at 676-77 (quoting Allgood v. Wilmington Sav. & Trust Co., 88 S.E.2d 825, 829 (N.C. 1955)). Money had and received therefore allows recovery based upon the well-established equitable principle that "a person should not be permitted to enrich himself unjustly at the expense of another." Id. (quoting Allgood, 88 S.E.2d at 829). Accordingly, the leading inquiry is not whether the defendant obtained the money honestly or in good faith. Id. Rather, the question becomes "to which party does the money, in equity and good conscience, belong?" Id.

Starting with unjust enrichment, Plaintiffs support their claim by arguing that Defendant accepted a benefit by collecting upon Plaintiffs' accounts "which [were] not conferred officiously or gratuitously by" Plaintiffs. (Doc. No. 14 at 10). Plaintiffs also assert that the resulting benefit is measurable. Simply determine the accounts Defendant collected upon. (Id.). Similarly, to support their claims for money had and received, Plaintiffs argue that "Defendant is in the possession of money which belongs to Cascade, and in equity and good conscience Defendant must be required to pay to Cascade." (Id.).

Upon review, this Court agrees that Plaintiffs' well-pleaded complaint sufficiently alleges Defendant's liability under unjust enrichment and money had and received. Plaintiffs maintained valid contracts with consumers. Defendant collected on the accounts connected to those contracts despite having neither title nor right to do so. As a result, Defendants hold in their possession funds that Plaintiffs were rightly entitled to.

C. Unfair and Deceptive Trade Practices

Unfair and deceptive trade practices are governed by the Unfair and Deceptive Trade Practices Act ("UDTPA"). N.C. GEN. STAT. § 75-1, et seq. "The elements of a claim for unfair and deceptive practices are: (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." Furr v. Fonville Morisey Realty, Inc., 130 N.C. App. 541, 503 S.E.2d 401 (1998), cert. dismissed, 351 N.C. 41, 519 S.E.2d 314 (1999). Notably, this cause of action is applicable to tortious interference contract situations. United Labs., Inc v. Kuykendall, 370 S.E.2d 375, 389 (N.C. 1988) (noting that UDTPA actions have not been limited to cases involving consumers only, but also include cases involving solely businesses, which affect consumers as well).

Plaintiffs argue that Defendant's collection of their accounts with knowledge of those accounts' true ownership constitutes an unfair and deceptive trade practice. (Doc. No. 14 at 11). These acts were in commerce, Plaintiffs argue, because they adversely affected Plaintiffs' business of purchasing and collecting from consumer accounts. (Id. at 12). Furthermore, actual injury resulted because third parties made payments to Defendants, thus negatively impacting Plaintiffs' business relationships and causing confusion in the marketplace. (Id.).

After alleging a violation of the UDTPA, Plaintiffs cite the act's provision allowing treble damages. (Id.). N.C. GEN. STAT. § 75-16 provides:

> If any person shall be injured or the business of any person, firm or corporation shall be . . . injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of [the UDTPA], such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

N.C. GEN. STAT. § 75-16 (2017). Because they were injured by an "act or thing done" in violation of the UDTPA—deceiving consumers to collect from their accounts—Plaintiffs argue that they are entitled to treble damages. (Doc. No. 14 at 12–13). Plaintiffs also cites N.C. GEN. STAT. § 75-16.1, which provides this Court the discretion to award attorneys fees to the prevailing party alleging a violation of the UDTPA. (Id. at 13). In order to receive attorney fees, this Court must find that:

> (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or
> (2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C. GEN. STAT. § 75-16.1 (2017). Plaintiffs again argue that Defendant intentionally pursued Plaintiffs' accounts despite warnings that their actions were unlawful. (Doc. No. 14 at 13).

Upon review, this Court agrees that Plaintiffs' well-pleaded complaint sufficiently alleges Defendant's liability under the UDTPA. Under Plaintiffs' complaint, Defendant engaged in deceptive conduct in commerce by misleading Plaintiffs' consumers into believing that their debts were payable to Defendant. As such, Plaintiffs are entitled to treble damages and attorneys fees.

D. Monetary Damages

After establishing liability during a motion for default, the Court must then independently determine damages. Carter Behavior Health, 2011 WL 5325485, at *4 (citing Ryan, 253 F.3d at 780-81; Gaines, 635 F. Supp. 2d at 416-17). Plaintiffs, however, request this Court to reserve the issue of damages because, without more information from Defendant, the current scope of harm remains unknown. (Doc. No. 13 at 5). While Plaintiffs know that Defendant contacted 72 accounts, they remain unaware as to the total extent of accounts contacted, not to mention the total amount Defendant collected. (Id. At 9). In accordance to Rule 55(b)(2) of the Federal Rules of Civil Procedure, this Court agrees with Plaintiffs that a future hearing is necessary to fully determine the scope of monetary damages available for relief. Fed. R. Civ. P. 55(b)(2)(B). The Court therefore reserves the issue of monetary damages until such time an evidentiary hearing may be held.

E. Injunctive relief

Given that the Court must delay its determination of monetary damages, it now assesses Plaintiffs' claims for injunctive relief. Plaintiffs not only request a permanent injunction to enjoin Defendant from communicating with Plaintiffs' consumers or collecting any Santander Accounts,

they also request this Court to compel Defendant to produce documents needed to determine the appropriate monetary damages.

In order to receive relief in the form of a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). In accordance to the above elements, Plaintiffs allege that they are permanently injured because Defendant continues to interfere with their legal right to over 200,000 consumer accounts. (Doc. No. 14 at 14). Plaintiffs further allege that no other remedy at law adequately addresses this permanent injury because Defendants have cast uncertainty and confusion in the market place by "driv[ing] a wedge between a consumer and Cascade's ownership in the accounts." (Id.). To that point, monetary remedies remain insufficient in Plaintiffs' view because Defendant remains uncooperative in aiding Plaintiffs' efforts to ascertain the extent of accounts communicated with and ultimately collected from. (Id.). Plaintiffs also argue that, absent injunctive relief, Defendants will continue their practice of contacting the Santander accounts Plaintiff purchased. (Id.).

As to the third element for receiving a permanent injunction, Plaintiffs allege that the balance of hardships weight in their favor. Rather than requiring Plaintiffs to comb through 200,000 accounts, Defendant would merely refrain from contacting and collecting on accounts they were never entitled to. (Id. at 15). Plaintiffs also argue that injunctive relief from Defendant's conduct would benefit the public interest by recognizing the rightful ownership of accounts and preventing illegal misrepresentations and collections. (Id.).

This Court agrees with Plaintiff. Defendant's alleged conduct warrants injunctive relief. Defendant continues to collect from accounts despite Plaintiff's warning that such conduct is unlawful. As such, even in the wake of monetary relief, Defendant's deceptive collection of consumer accounts must end. Furthermore, Defendants alone hold the information necessary to determine the full scope of Plaintiffs' injury. As mentioned above, the Court requires that information in order to hold a hearing and determine Plaintiffs' monetary damages. Without such information, Defendants effectively block Plaintiffs from the damages they are entitled to. Therefore, the Court hereby grants as Plaintiffs' relief a permanent injunction to enjoin Defendant from:

1. <u>Communication</u>. Defendants are enjoined from further communicating with any consumer regarding accounts within the Santander Portfolio.

2. <u>Collection</u>. Defendants are enjoined from collecting or attempting to collect on accounts from the Santander portfolio.

Additionally, the Court grants Plaintiffs' request to compel Defendant to produce:

1. <u>Specific Santander Accounts</u>. Defendants must produce reports identifying all Santander accounts Defendant has acquired or collected on in the past 24 months.
    a. These reports should identify each consumer with the following: (1) their last name; (2) the last four digits of their social security number; and (3) their corresponding Santander account number

2. <u>Related Documents.</u> Defendants must produce all documents related to their purchase of the Santander Accounts within the past 24 months.
    a. These documents include, but are not limited to, correspondence, bills of sale, and purchase documents.

3. <u>Collection Documents</u>. Defendants must produce all records of their collection activities in respect to Santander Portfolio accounts.
    a. These records include, but are not limited to, notes, correspondence, and recordings of any calls with consumers.

4. <u>Third Party Referrals</u>. Defendants must produce the identity of any third party, if any, who referred Santander accounts to Defendant for collection.

5. <u>Santander Account Sellers</u>.  Defendants must produce the identity of any person or entity that sold Santander accounts to Defendant by way of name, address, email, telephone, and website.

6. <u>Copies of Santander Account Agreements</u>.  Defendants must produce copies of each and every purchase or forwarding agreements for all Santander accounts identified.

7. <u>Accounting.</u>  Defendant must make an accounting of all monies collected from any of the Santander accounts.
    a. This accounting must include monies collected by Defendant or their employees, contractors, affiliates, members, designees, owners, clients, or any other third party entity acting in concert with Defendant.

The Court defines "Santander Accounts" and "Santander Portfolios" as those accounts and portfolios originally purchased by Plaintiffs from Santander which Defendant has obtained, communicated with, or collected from.  Defendant has 30 days to provide Plaintiffs the documents listed above.  Afterward, an evidentiary hearing regarding Plaintiff's monetary damages will then be scheduled.

## IV. CONCLUSION

**IT IS THEREFORE, ORDERED** that Plaintiff's Motion for Default Judgment, (Doc. No. 13), is **GRANTED**.  The Court awards Plaintiffs' requested injunctive relief as described in detail above.  As to Plaintiff's monetary damages, the Court reserves such questions until Defendant has produced the required information and a future evidentiary hearing may be held.

Signed: January 5, 2018

Robert J. Conrad, Jr.
United States District Judge