UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00470-RJC-DSC

| | |
|---|---|
| CASCADE CAPITAL, LLC and <br> CASCADE CAPITAL, LLC – <br> SERIES A, <br><br> Plaintiffs, <br><br> v. <br><br> DRS PROCESSING LLC d/b/a <br> MILLER STARK KLEIN & <br> ASSOCIATES <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **ORDER** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**THIS MATTER** comes before the Court on Cascade Capital, LLC and Cascade Capital, LLC – Series A's ("Plaintiffs") Motion for Order to Show Cause, (Doc. No. 18), and this Court's Order granting the motion and directing that DSR Processing LLC dba Miller Stark Klein & Associates and its owner Darryl Miller (collectively, "Defendant"), appear and show cause why it and he should not be held in contempt, (Doc. No. 24).

I.  FINDINGS OF FACT

The facts of this case are fully set forth in the Court's January 5, 2018, Default Judgment Order, (Doc. No. 16), and the Court's August 29, 2018, Show Cause Order, (Doc. No. 24). The facts contained in those Orders are specifically incorporated by reference herein.

The Default Judgment Order provided:

… the Court grants as Plaintiffs' relief a permanent injunction to enjoin Defendant from:

1.  Communication. Defendants are enjoined from further communicating with any consumer regarding accounts within the Santander Portfolio.

2.  Collection. Defendants are enjoined from collecting or attempting to collect on accounts from the Santander portfolio.

Additionally, the Court grants Plaintiffs' request to compel Defendant to produce:

1.  Specific Santander Accounts. Defendants must produce reports identifying all Santander accounts Defendant has acquired or collected on in the past 24 months.
a.  These reports should identify each consumer with the following: (1) their last name; (2) the last four digits of their social security number; and (3) their corresponding Santander account number

2.  Related Documents. Defendants must produce all documents related to their purchase of the Santander Accounts within the past 24 months.
a.  These documents include, but are not limited to, correspondence, bills of sale, and purchase documents.

3.  Collection Documents. Defendants must produce all records of their collection activities in respect to Santander Portfolio accounts.
a.  These records include, but are not limited to, notes, correspondence, and recordings of any calls with consumers.

4.  Third Party Referrals. Defendants must produce the identity of any third party, if any, who referred Santander accounts to Defendant for collection.

5.  Santander Account Sellers. Defendants must produce the identity of any person or entity that sold Santander accounts to Defendant by way of name, address, email, telephone, and website.

6.  Copies of Santander Account Agreements. Defendants must produce copies of each and every purchase or forwarding agreements for all Santander accounts identified.

7.  Accounting. Defendant must make an accounting of all monies

> collected from any of the Santander accounts.
> a.   This accounting must include monies collected by Defendant or their employees, contractors, affiliates, members, designees, owners, clients, or any other third party entity acting in concert with Defendant.
>
> The Court defines "Santander Accounts" and "Santander Portfolios" as those accounts and portfolios originally purchased by Plaintiffs from Santander which Defendant has obtained, communicated with, or collected from.  Defendant has 30 days to provide Plaintiffs the documents listed above.  Afterward, an evidentiary hearing regarding Plaintiff's monetary damages will then be scheduled.

(Doc. No. 16 at 12-13).

Plaintiff served Defendant with the Default Judgment Order by first class and certified mail on January 8, 2018. (Doc. No. 17).  An attorney contacted counsel for Plaintiff on January 16, 2018, and requested an extension of the Order's production deadline, (Doc. No. 20 at 2); thus, Defendant had actual knowledge of the Order. Nevertheless, Defendant produced no records to Plaintiff, (Id. at 3), and continued to collect on the accounts after service of the Order, (Doc. No. 23 at 2).  Additionally, a third party provided information that Defendant sold accounts to it for $50,000 near the time the Order was issued. (Doc. No. 20 at 2-3; Doc. No. 21 at 2).

Due to its lack of compliance with the Order, on August 29, 2018, the Court directed Defendant and its owner Darryl Miller to appear on September 19, 2018, to show cause why it and he should not be held in contempt. (Doc. No. 24 at 4-5). Counsel for Plaintiff served the Show Cause Order on Defendant by first class and certified mail at its current and previous registered business addresses, one of which was the address used to perfect service of the Default Judgment Order, (compare Doc. No. 17 with Doc. No. 25), and on its owner, Darryl Miller.  The Court conducted the

show cause hearing on September 19, 2018, at which counsel for Plaintiff and Mr. Miller, pro se, appeared.

II. DISCUSSION

To establish civil contempt, a movant must show each of the following elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (quoting Colonial Williamsburg Found. v. Kittinger Co., 792 F. Supp. 1397, 1405–06 (E.D. Va. 1992), aff'd, 38 F.3d 133 (4th Cir. 1994)). Intent is largely irrelevant to a finding of civil contempt; the Court focuses only on whether in fact the alleged contemnor's conduct complied with some "unequivocal command" set forth in specific detail in the Order. In re Gen. Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995). If the moving party makes a prima facie showing of these elements, the burden shifts to alleged contemnor to justify his non-compliance. United States v. Rylander, 460 U.S. 752, 757 (1983). Finally, prior to holding a person in contempt, the district court must provide the alleged contemnor notice and opportunity for a hearing. Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 826–27 (1994).

A. Defendant is in Contempt of the Default Judgment Order

The Court finds that Plaintiffs have established each element of a prima facie case for contempt by clear and convincing evidence, and Defendant has failed to

4

justify its non-compliance.  The Court further finds that Defendant was given notice and a hearing before being held in contempt.

The Default Judgment Order is a valid order issued by the Court in Plaintiffs' favor, of which Defendant has actual and constructive knowledge.  Plaintiff has presented substantial evidence documenting Defendant's ongoing violation of the terms of the Default Judgment Order.  For example, Defendant provided no information to Plaintiff in response to the Default Judgment Order until September 11, 2018. (Doc. No. 28: Plaintiff H'rg Exhibit 3).  In the September 11 response, Defendant claimed to have no records of its collection activities, including correspondence with Santander Portfolio account consumers. (Id. at 1).  Yet, some of those consumers provided Plaintiffs with written demands for payment bearing Defendant's letterhead. (Doc. No. 26: Plaintiff H'rg Exhibit 1).  Similarly, Defendant claimed to have no accounting records showing monies collected on Santander accounts. (Doc. No. 28: Plaintiff H'rg Exhibit 3 at 1).  Yet, a consumer provided Plaintiff a Payment Method Authorization Form bearing Defendant's name and detailing numerous credit card payments. (Doc. No. 27: Plaintiff H'rg Exhibit 2).  The Court finds that the information on record establishes by clear and convincing evidence that Defendant has actual knowledge of its violations and continues to violate willfully the Court's Order.

Finally, the Court finds by clear and convincing evidence that Plaintiffs has suffered resulting harm, including but not limited to Defendant's continuing to collect money on Santander accounts and failing to disclose records necessary to determine

the amount of money owed to Plaintiffs, as well as the loss of goodwill of customers being pursued by multiple companies for the same debt. Accordingly, the Court finds Defendant in contempt of court.

  B. Civil Contempt Sanctions

The Court has the inherent power to coerce compliance with its orders, and it may exercise that authority by ordering a defendant to be incarcerated or to pay a fine, or both, until he purges himself of his contempt. Int'l Union, United Mine Workers of Am., 512 U.S. at 828. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1947). The term of incarceration may be indefinite because "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act." Id. Therefore, he "'carries the keys of the prison in his own pocket.'" Id. (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442 (1911)); see also Shillitani v. United States, 384 U.S. 364, 370 n.6 (1966) (upholding a two-year civil contempt sentence that included a purge clause). Similarly, financial penalties, such as a per diem fine until a contemnor complies exerts "constant coercive pressure" to compel obedience with an affirmative court order. Id. at 829. Disgorgement of profits is viewed as a means of deterring future violations by the contemnor. W.E Bassett Co. v. Revlon, Inc., 435 F.2d 656, 664 (2d Cir. 1970).

Here, the records yet to be produced are necessary to determine the amount of

profit gained by Defendant's continued collection on and possible sale of the accounts. Defendant's failure to provide any information until just days before the show cause hearing, its provision of incomplete and false information in the September 11 response, and its lack of candor during the hearing before the Court establish that contempt sanctions of imprisonment and fines are necessary to coerce Defendant to comply with the Default Judgment Order. Accordingly, the Court will order a per diem fine and indefinite incarceration until the needed documents are produced. Although Defendant has had ample opportunity to cure his non-compliance, the Court will suspend the imposition of the sanctions below until after a hearing on October 2, 2018, at 10 am.

III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant DSR Processing LLC dba Miller Stark Klein & Associates and its owner Darryl Miller are hereby found in contempt of the Court's Default Judgment Order entered January 5, 2018.

2. On account of such contempt, the Court imposes the following sanctions; however, execution of the sanctions is suspended until after a hearing on October 2, 2018, at 10 am:

    a. Defendant is fined $500 per day, beginning on October 2, 2018, and continuing until such time as Defendant has purged itself of said contempt.

    b. Defendant shall immediately disgorge any monies collected on Santander accounts or received from selling Santander accounts from January 5, 2018,

7

forward. The Court will determine the amount to be disgorged at the hearing on October 2, 2018.

c. The United States Marshal is authorized and directed to take any and all actions necessary, including but not limited to the use of reasonable force, to arrest and take into custody Defendant's owner Darryl Miller, and to enter and remain on the premises where he is located, or reasonably believed to be located, including but not limited to, the land, buildings, vehicles and any structures located thereon. Upon his arrest, the United States Marshal is not required to take Darryl Miller before a magistrate, but instead to incarcerate him in a facility which the United States Marshal shall designate. Thereafter, Darryl Miller shall remain incarcerated and in the custody of the United States Marshals Service until Defendant has purged itself of said contempt and/or until such time as the Court orders his release.

d. Plaintiff shall pay the United States Marshal a deposit, in advance, for any and all anticipated expenses, as estimated by the United States Marshal, in connection with: (1) the apprehension and custody of Darryl Miller; (2) his transportation to the facility that the Marshal designates; and (3) the execution of this and any other process associated with this finding of contempt. Darryl Miller shall be liable and shall reimburse Plaintiff for actual expenses incurred in connection with his arrest and incarceration under this Order and the United States Marshal to the extent of actual expenses incurred and paid in excess of Plaintiff's advance deposit. The United States Marshal

shall submit a report of its expenses, as described herein, to the Court within ten (10) days after Darryl Miller's arrest.

e. Plaintiff shall submit itemized documentation with supporting affidavits of all reasonable costs, fees, and expenses incurred in this action to the Court within fourteen (14) days of this Order.

3. Defendant shall purge itself of its contempt by:

a. fully complying with and obeying the Default Judgment Order, entered January 5, 2018, as well as this Order;

b. apprising the Court of any attempt that it makes to satisfy the prescribed means for purging this contempt citation, by filing sworn affidavits with the Clerk of Court specifying the actions taken to comply with the Court's directions, supported by all necessary documentation;

c. upon full compliance with the Orders, filing an appropriate motion for purging of contempt and release from incarceration, supported by all necessary documentation and sworn affidavits specifying all actions taken to comply with the Court's directions; and

d. making such further report as the Court may require.

4. In the event that Defendant fails to purge itself of its contempt or fails to take substantial steps toward purging their contempt within fourteen (14) days of Darryl Miller's arrest, the United States Marshal is authorized and directed to take any necessary actions, including reasonable force, to enter the premises located at 1811 Sardis Road North, Suite 218, Charlotte, North Carolina 28270 if

still controlled by Defendant, to secure the premises and to enable Plaintiff to enter the premises and recover any pertinent information located therein, including digital devices on which such information may be stored, and ensure compliance with the Court's Orders.

5. The United States Marshal is also authorized to seize or impound any property on the premises identified by Plaintiff as personal property belonging to the Defendant, up to an amount sufficient to satisfy the debt owed by Defendants on the judgment at that time, including interest and the United States Marshal's fees. See 28 U.S.C. § 1921. Plaintiff shall create and sign a written inventory of all items removed from the premises, which the United States Marshal shall confirm and sign when verified, and provide a copy of same to the United States Marshal and the Court. Plaintiff shall be solely responsible for the transport and storage of all items removed from the premises. The United States Marshal is further directed to sell the items seized pursuant to Paragraph 5 of this Order by public auction pursuant to 28 U.S.C. §§ 2001, 2002, et seq., at a time and place designated by the United States Marshal and federal law.

6. The Court retains jurisdiction, upon the failure of Defendant to purge itself fully of civil contempt, to levy a compliance fine against it and to grant such other and further relief as the Court finds appropriate.

7. This Order may be executed nationwide pursuant to Federal Rule of Civil Procedure 4.1(b) which provides that "An order committing a person for civil contempt of a decree or injunction issued to enforce federal law may be served and

enforced in any district."

The Clerk is directed to certify copies of this Order to Plaintiff, Defendant, and the United States Marshal Service.

Signed: September 29, 2018

Robert J. Conrad, Jr.
United States District Judge